

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSH SPRAGUE, | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civ. A. No. 4:20-CV-2604 |
| ED'S PRECISION MANUFACTURING, LLC, | § § § | |
| *Defendant*. | § § § | |

## **DEFENDANT ED'S PRECISION MANUFACTURING, LLC'S MEMORANDUM OF LAW**

TO THE HONORABLE CHIEF JUDGE LEE H. ROSENTHAL:

Defendant Ed's Precision Manufacturing, LLC respectfully files this Memorandum of Law in support of its contested issues of law.

**A. Plaintiff was not entitled to any leave under the applicable statutes, because he did not, and cannot, meet the statutory prerequisites.**

Plaintiff asserts claims against Defendant for (1) "FMLA Interference" and (2) "FMLA Discrimination and Retaliation." *See* [Doc. No. 1] (Pl.'s Orig. Compl.) ¶¶ 14–23. However, Plaintiff was not entitled to any leave because he did not, and cannot, meet the statutory prerequisites entitling him to leave under the FMLA and EFMLEA. Plaintiff was not eligible for paid leave under these statutes.

1. *Plaintiff was not entitled to any leave under the applicable statutes, because he did not provide any of the statutorily required information or documentation.*

In order to be eligible for paid leave under the FMLA and EFMLEA for reasons related to caring for children due to the COVID-19 global pandemic, Plaintiff was required to provide a signed statement attesting to certain facts. First, Plaintiff was required to provide a signed

statement containing (1) his name, (2) the date(s) for which leave is requested, (3) the COVID-19 qualifying reason for leave, and (4) a statement representing that he is unable to work or "telework" because of the COVID-19 qualifying reason. *See* 29 C.F.R. § 826.100. Plaintiff never provided this required statement.

Plaintiff was required to provide additional information to his employer to be entitled to the requested leave because Plaintiff was taking leave to care for his two youngest children, A.S. and E.S., whose schools allegedly closed due to COVID-19. *See* 29 C.F.R. § 826.100; *see also* [Doc. No. 1] ¶ 8; *see also* [Doc. No. 28-4]; *see also* [Doc. No. 28-10], at 76:14 – 77:06; *see also* [Doc. No. 28-11] at Interrog. No. 15. Specifically, Plaintiff was required to provide (1) the name of the child being cared for, (2) the name of the school, place of care, or childcare provider that closed or became unavailable due to COVID-19 reasons, and (3) a statement representing that no other suitable person is available to care for the child during the period of requested leave. *See* 29 C.F.R. § 826.100. Plaintiff failed to provide any of the statutorily required information or documentation. *See* [Doc. No. 28-1] ¶¶ 4, 16; *see also* [Doc. No. 28-10], at 79:12–21.

2. *Plaintiff was not entitled or eligible for any leave under the applicable statutes, because there were suitable people available to care for his children.*

Plaintiff was not entitled to leave under the FMLA and EFMLEA because there were numerous other suitable people available to care for his children.

An employee is entitled to take leave under the EFMLEA and EPSLA if he is unable to work due to a need to care for his son or daughter whose school or place of care has been closed, or whose childcare provider is unavailable, for reasons related to COVID-19 ***only*** if no other suitable person is available to care for the son or daughter during the period of such leave. *See* 29 C.F.R. § 826.20(b) (emphasis added).

2

Plaintiff's own testimony establishes there were multiple family members who could have assisted in caring for his children during the period of requested leave. *See* [Doc. No. 28] §§ I(B)(1), III(A)(2); *see also* [Doc. No. 28-10], at 38:03–14, 39:02–11, 39:19–20, 40:03–06, 41:24–43:01, 44:25 – 45:04, 47:01–04, 47:16–19, 48:05–09, 48:16–19, 49:04–20, 50:02–11, 51:08–18, 51:23 – 52:04, 52:07–14, 55:09–13; 55:21–23, 56:13–21; 57:01–12.

Additionally, Plaintiff testified he and his wife did not need assistance to supervise their children when they were home alone with them. *See* [Doc. No. 28-10], at 57:13–25. During the COVID-19 global pandemic, Plaintiff's wife telecommuted, working remotely from home. *See id.*, at 71:04–07, 73:24 – 74:04, 131:20–23; *see also* [Doc. No. 28-14]. Plaintiff also considers his eldest daughter E.C. a responsible child, allowing her to babysit her two siblings during the COVID-19 pandemic. *See* [Doc. No. 28-10], at 35:14–15, 37:01–22. On April 22, 2021, Plaintiff's wife, Jennifer Sprague, testified both her older children have supervised her other children on their own.

3. *Plaintiff was not entitled or eligible for the requested leave under the applicable statutes, because Plaintiff's child's school was not closed and he took leave after the last graded assignments were due.*

It is indisputable that Plaintiff's sole reason for requesting leave was to care for his two youngest children, A.S. and E.S., because their schools allegedly closed due to COVID-19. *See* [Doc. No. 28-4]; *see also* [Doc. No. 28-10], at 76:14 – 77:06; *see also* [Doc. No. 28-11], at Interrog. No. 15. It is also indisputable that for the 2019–2020 school year, Plaintiff's middle child, A.S., attended Gleason Elementary, while Plaintiff's youngest child, E.S., attended Growing Scholars Montessori. *See* [Doc. No. 28-12], Daily Attendance; *see also* [Doc. No. 28-13]; *see also* [Doc. No. 28-11], at Interrog. No. 15; *see also* [Doc. No. 28-15].

3

Despite Plaintiff allegedly needing leave to care for both A.S. and E.S., Growing Scholars Montessori School, E.S.'s school, never closed during 2020 with all locations being open, operating, and providing its normal services during its normal business hours during the months of March 2020, April 2020, May 2020, and June 2020. *See* [Doc. No. 28-12] ¶ 4. During the entirety of May 2020 E.S. attended school approximately five (5) days per week, with Plaintiff taking FMLA leave on days when E.S. was at school. *See* [Doc. No. 28-12]; *see also* [Doc. No. 28-13]; *compare* [Doc. No. 28-9] *with* [Doc. No. 28-13].

Furthermore, for A.S., all graded assignments were required to be turned in by May 18, 2020. *See* [Doc. No. 28-16]. However, Plaintiff continued taking paid sick leave until May 27, 2020—finally informing Ed's Precision that he had completed his requested paid leave and would be returning to his normal work schedule. *See* [Doc. No. 28-9]; *see also* [Doc. No. 28-10], at 87:25–89:05.

**B. Plaintiff's FMLA interference claim fails and his own judicial admissions undermine this claim.**

Plaintiff claims Defendant interfered with his EFMLEA rights by terminating him after granting him the leave requested. [Doc. No. 1] ¶¶ 20–21. However, Plaintiff cannot demonstrate (1) he was entitled to the leave sought, (2) he gave proper notice of his intention to take FMLA leave, and (3) Defendant denied him the benefits to which he was entitled under the FMLA. *See id.*

It is beyond dispute that Plaintiff received all the EFMLEA leave he requested and was allegedly entitled. *See* [Doc. No. 1] ¶¶ 9–10, 20; *see also* [Doc. No. 28-10], at 79:01–05, 87:25–88:20, 88:21–89:05, 141:12–14. Plaintiff requested EFMLEA leave on April 3, 2020, and it was granted the same day—even though he failed to meet the statutory prerequisites. *See* [Doc. No. 28-1] ¶¶ 4, 16; *see also* [Doc. No. 28-4]; *see also* [Doc. No. 28-10], at 79:01–05, 141:12–14. On

4

May 27, 2020, Plaintiff voluntarily and unequivocally informed Ed's Precision that ***he had completed his requested leave*** and would return to his normal schedule the immediately following week. *See* [Doc. No. 28-1] ¶ 6; *see also* [Doc. No. 28-10], at 87:25–88:20, 88:21–89:05.

Plaintiff was terminated on June 1, 2020, for infractions that occurred on May 29, 2020, and May 30, 2020. *See* [Doc. No. 28-1] ¶¶ 6–7, 16; *see also* [Doc. No. 28-8], at 1; *see also* [Doc. No. 28-10], at 103:25 – 104:3. Thus, Plaintiff was terminated after he completed the requested leave and for terminable offenses that occurred outside his leave period. There was no interference, because Plaintiff was not denied FMLA/EFMELA benefits to which he was entitled. *See Matson v. Sanderson Farms, Inc.*, 388 F.Supp.3d 853, 873–74 (S.D. Tex. 2019) (Rosenthal, J.).

### C. Plaintiff's threadbare FMLA discrimination and retaliation claim fails because Plaintiff was terminated for legitimate, nonretaliatory reasons.

Plaintiff claims Ed's Precision terminated him because he requested and took FMLA/EFMLEA leave. [Doc. No. 1] ¶¶ 22–23.

To prevail on an FMLA retaliation claim, a plaintiff must first demonstrate a prima facie case for retaliation by showing that (1) he engaged in protected activity, *i.e.*, requesting or taking FMLA-qualifying leave, (2) an adverse employment action occurred, and (3) that the plaintiff was treated less favorably than an employee who had not requested FMLA leave or the adverse employment decision was made because the plaintiff took FMLA leave. *See Mauder v. Metro. Transit. Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). An FMLA retaliation claim requires a plaintiff to show discriminatory intent. *See Cuellar v. Keppel Amfels, LLC*, 731 F.3d 342, 349–50 (5th Cir. 2013) (Elrod, J., concurring).

As discussed above, Plaintiff was not engaging in a protected activity because he was not eligible for paid leave under the FMLA or EFMLEA.[1] *See, supra* §(A). Plaintiff has no evidence establishing that he was treated less favorably than an employee who had not requested FMLA leave or his adverse employment decision was made ***because the plaintiff took FMLA leave***, as he is required to show. *See Mauder*, 446 F.3d at 583. Rather, the evidence establishes Plaintiff was terminated for legitimate, non-discriminatory, non-retaliatory reasons. *See* [Doc. No. 28-8]; *see also* [Doc. No. 28-10], at 106:01 – 107:24, 110:08–20.

Approximately three (3) weeks before his termination, Plaintiff was expressly advised, in writing, of the importance of working all scheduled hours—which he acknowledged. *See* [Doc. No. 28-5]; *see also* [Doc. No. 28-10], at 67:19–21, 68:10–14, 68:23 – 69:04, 69:09–19. Furthermore, Plaintiff testified it was improper to leave work early without telling a supervisor because the procedure required him telling one of his supervisors that he needed to leave. *See* [Doc. No. 28-10], at 65:05–12, 66:10–13. Plaintiff disregarded these directives, clocked out at 2:35 p.m., left work without informing any of the supervisors, and was terminated as a result. *See* [Doc. No. 28-1] ¶ 8; *see also* [Doc. No. 28-10], at 67:06–11, 102:05–14, 103:25 – 104:3, 106:01 – 107:24, 108:20–22, 110:08–20; *see also* [Doc. No. 28-8]. Plaintiff also failed to report to work on Saturday, May 30, 2020, as he was instructed to do.

Plaintiff's claim also fails because he cannot show that Ed's Precision had a discriminatory intent in terminating Plaintiff—as is required. *See Cuellar*, 731 F.3d at 349–50. Plaintiff was terminated for legitimate reasons, *i.e.* insubordination and violation of company policies, defeating Plaintiff's claim. *See* [Doc. No. 28-1] ¶ 8; *see also* [Doc. No. 28-8], at 1; *see also* [Doc. No. 28-

---

[1] Because Plaintiff cannot make a prima facie showing of discrimination or retaliation, the burden does not shift to Ed's Precision to articulate a legitimate, non-discriminatory reason for the challenged action. *See Matson v. Sanderson Farms, Inc.*, 388 F.Supp.3d 853, 869 (S.D. Tex. 2019) (Rosenthal, J.). But, even if the burden shifted, Ed's Precision has established a legitimate, non-discriminatory reason for Plaintiff's termination.

10], at 103:25 – 104:3; *see also Parker v. Georgia-Pacific Corp.*, 247 Fed.Appx. 507, 509 (5th Cir. 2007) (per curiam) (holding that summary judgment was appropriate where employee was terminated outside FMLA leave period for, *inter alia*, insubordination and leaving job earlier than requested or approved and Plaintiff failed to show stated reasons were pretextual).

Lastly, Plaintiff claims Ed's Precision's stated reasons for termination are pretextual. *See* [Doc. No. 1] ¶ 10. This is incorrect and appears to be solely based on timing. This Court and the U.S. Court of Appeals for the Fifth Circuit have held that temporal proximity alone is not sufficient to support a reasonable inference of pretext. *See Matson*, 388 F.Supp.3d at 883.

### D. The after-acquired evidence doctrine bars Plaintiff's front pay and precludes back pay damages.

In the alternative, even if Plaintiff could establish Ed's Precision discriminated or retaliated against him—which he cannot—front pay and back pay are not appropriate remedies because he committed a terminable offense of which Ed's Precision was not previously aware.

The after-acquired evidence doctrine limits the relief available to a successful plaintiff if the employer would have terminated plaintiff's employment for conduct the employer failed to discover until after the allegedly discriminatory termination occurred. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 361-62 (1995). While the after-acquired evidence doctrine does not absolve employers of liability, the employee's own conduct forecloses any equitable award of front pay or reinstatement, and limits the award of back pay to the time period between the date of the unlawful termination and the date on which the employer discovered the new information. *McKennon*, 513 U.S. at 361–62 (recognizing the need to take employee's wrongdoing into account before crafting a remedy for the employee's discriminatory discharge in violation of the ADEA). To affect this remedy, employers bear the burden of proving "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone

7

if the employer had known of it at the time of discharge." *Weeks v. Coury*, 951 F. Supp. 1264, 1274 (S.D. Tex. 1996). Employers, however, need not demonstrate that they have previously discharged other employees for the same reason. *Id*. Moreover, it is of no consequence that the evidence on which the employer relies as an alternative basis for termination was "acquired during the course of discovery in a suit against the employer, ... even if the information might have gone undiscovered absent the suit." *McKennon*, 513 U.S. at 362.

Ed's Precision's Employment Policies provides a non-exhaustive list of conduct which would subject an employee to disciplinary action, including termination—(1) falsification, misrepresentation or omission of information, documents or records, (2) lying, (3) falsifying injury reports or reasons for leave. *See* [Doc. No. 28-2] § 7.1.

Plaintiff materially misrepresented to Defendant that he needed paid sick leave to care for his two youngest children, A.S. and E.S., because their schools closed due to COVID-19. [Doc. No. 1] ¶ 8; *see also* [Doc. No. 28-4]; *see also* [Doc. No. 28-10], at 76:14 – 77:06; *see also* [Doc. No. 28-11] at Interrog. No. 15. However, E.S.'s school never closed during 2020; she actually went to school approximately five (5) days per week during the entirety of May 2020; and in May 2020 Plaintiff took FMLA leave on days when E.S. was at school. *Compare* [Doc. No. 28-9] *with* [Doc. No. 28-13]; *see also* [Doc. No. 28-12]. Additionally, A.S. completed the 2019–2020 school year on May 18, 2020 but Plaintiff continued taking paid sick leave until May 27, 2020. *See* [Doc. No. 28-16]; *see also* [Doc. No. 28-9]; *see also* [Doc. No. 28-10], at 87:25–89:05.

These facts have only come to light through discovery in this case when Defendant obtained records from the Growing Scholars Montessori School and Gleason Elementary. Had Defendant known of Plaintiff's misrepresentations to the company it would have terminated his employment. *See* [Doc. No. 28-1] ¶ 12.

Respectfully submitted,

By: */s/ Robert E. Freehill*
    Robert E. Freehill
    Texas State Bar No.: 24069023
    S.D. Tex. No. 1839921
    Attorney-In-Charge
    Johnson & Associates
    Attorneys at Law, PLLC
    303 East Main Street, Suite 100
    League City, Texas 77573
    Main:281-895-2410
    Fax: 409-263-1020
    robert@Johnson-Attorneys.com

    ATTORNEY-IN-CHARGE FOR DEFENDANT

**OF COUNSEL:**

Christopher L. Johnson
Texas State Bar No. 24069999
S.D. Tex. No. 1050247
chris@Johnson-Attorneys.com
Justin M. Kornegay
Texas State Bar No. 24077668
S.D. Tex. No. 1717328
justin@Johnson-Attorneys.com
Caroline E. Bossier
Texas State Bar No.: 24110669
S.D. Tex. No.: 3557678
caroline@Johnson-Attorneys.com
Johnson & Associates
Attorneys at Law, PLLC
303 East Main Street, Suite 100
League City, Texas 77573
Main:281-895-2410
Fax: 409-263-1020

## **CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of this document has been served on all attorneys of record and/or pro-se litigants by electronic mail from the clerk of this Court on April 23, 2021:

<u>Via ECF/CM</u>
Clayton D. Craighead
State Bar No. 24065092
S.D. Tex. No. 958992
440 Louisiana, Suite 900
Houston, TX 77002
Ph.: 832.798.1184
Fax: 832.553.7261
Clayton.craighead@thetxlawfirm.com

                                                           */s/Robert E. Freehill*
                                                           Robert E. Freehill