IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSH SPRAGUE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-2604 |
| | § | |
| ED'S PRECISION MANUFACTURING, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Josh Sprague sued his former employer, Ed's Precision Manufacturing, LLC, asserting claims for interference and retaliation under the Family and Medical Leave Act. Sprague took leave under the Act shortly after the COVID-19 pandemic began because he believed that two of his children's schools would close. He filled out a leave form that Ed's Precision gave him, and Ed's Precision approved his request for intermittent leave.

Sprague took intermittent leave for nearly two months, taking two extra days off per week to watch his children. He returned to work on May 29, 2020, the day after the last day of school. The same day, Ed's Precision made plans to fire him because he left work one hour early. Two days later, Ed's Precision fired him.

Sprague sued Ed's Precision for interfering with his right to leave and for retaliating against him for taking leave under the Family and Medical Leave Act. The parties dispute whether Sprague was entitled to leave under the Act, whether Ed's Precision is estopped from challenging Sprague's eligibility for leave after approving his request, and whether Ed's Precision's reason for firing Sprague—leaving early on his first day back—was pretext for retaliation. These factual

disputes preclude summary judgment on Sprague's retaliation claim. Sprague has not raised a factual dispute material to determining whether Ed's Precision interfered with his leave benefits.

Based on the applicable law, summary judgment record, and the parties' briefing and oral argument, Ed's Precision's motion for summary judgment, (Docket Entry No. 28), is granted in part and denied in part. The motion is granted as to Sprague's interference claim and denied as to Sprague's retaliation claim. The reasons for these rulings are explained below.

I.  **Background**

Josh Sprague worked for Ed's Precision Manufacturing, LLC, a company that produces custom fasteners. (Docket Entry No. 28-8 at 1). Sprague was a machinist. He began at Ed's Precision in "2000, maybe 2001." (Docket Entry No. 28-10 at 5). Sprague temporarily left Ed's Precision around "2005, 2006" and worked elsewhere until returning to Ed's Precision in 2011. (*Id*. at 7).

In early April 2020, Sprague filed for paid leave under the Family and Medical Leave Act because of the COVID-19 pandemic. Sprague filed for intermittent leave using the paid leave request form that Ed's Precision provided. (Docket Entry No. 34-21). The form gives employees seven options for requesting leave:

- I'm currently subject to a federal, state or local quarantine or isolation order related to COVID-19.
- I've been advised by a health care provider to self-quarantine related to COVID-19.
- I'm caring for an individual subject to a quarantine or isolation order.
- I'm experiencing COVID-19 symptoms and seeking a medical diagnosis.
- I'm caring for a child whose school or place of care is closed due to COVID-19.

- I'm experiencing any other substantially similar condition specified by the U.S. Department of Health and Human Services.
- I'm requesting an emergency paid sick leave in accordance to the FMLA.

(*Id.*). Sprague checked the box indicating that he needed leave to care for "a child whose school or place of care is closed due to COVID-19." (*Id.*). Sprague requested leave to care for his two youngest children. (Docket Entry No. 28-4 at 1). The form did not ask for a start or end date for the intermittent leave, and did not ask for information about the school closing.

Sprague's middle child attends a public elementary school, and his youngest child attends a Montessori school. (Docket Entry No. 28-11 at 5). The elementary school required graded assignments to be turned in on Monday, May 18, 2020, but gave students ungraded "Learning at Home packets" to complete for the remainder of the school year. (Docket Entry No. 28-16 at 3). The last day of school was May 28, 2020. (Docket Entry No. 34-22 at 2). The school remained closed, with remote learning only, through the 2020 spring semester. (*Id.*). The Montessori school did not close during the school year. (Docket Entry No. 28-12 at 1). The youngest child attended school in May and June 2020. (Docket Entry No. 28-13 at 3 and 4).

During Sprague's leave period, Sprague and his wife "switched off" taking care of their children. (Docket Entry 28-10 at 20). Sprague's wife teleworked, (*id.*), and Sprague took leave on "Monday and Wednesday" of one week and "Tuesday and Thursday" of the next week. (*Id.* at 21). His wife took care of the children on the days Sprague worked. (*Id.*).

On May 27, 2020, Sprague informed Ed's Precision that he had completed his paid leave. (Docket Entry No. 28-10 at 23). In his deposition, Sprague stated that he could return to full working hours "during the summer." (*Id.* at 22). He did not inform Ed's Precision whether he intended to return to paid sick leave in the fall because he did not know "what was going to happen

3

the next school year." (*Id*. at 23). Sprague told Ed's Precision that he did not "know how the next school year is going to go." (*Id*. at 24).

On Friday, May 29, 2020, Sprague returned to work. One of Sprague's supervisors, Ramiro Schurr, told Sprague and his coworker, Jesus Ramirez, not to leave work early. Schurr then "said [Sprague and Ramirez] could leave" when distributing paychecks at approximately 2:30 p.m., an hour before the normal quitting time of 3:30. (Docket Entry No. 28-10 at 26). Ramirez stated in his declaration that Schurr told him he could leave at 2:35, but ordered Sprague to stay at work until 3:30. (Docket Entry No. 28-7 at 1). Sprague left work without getting permission from his Schurr or his other supervisor, Ken Schmidt, clocking out at 2:35. (Docket Entry No. 28-8 at 2). After clocking out, but before leaving, Schurr told Sprague that he should "come in and work Saturday." (Docket Entry No. 28-10 at 26). Sprague testified that he "took [Schurr's request to work on Saturday] as a joke" because Schurr was "laughing about it" when he said it. (*Id*. at 25). Sprague then left work at 2:35. Sprague testified that he "has the right to leave" when either Schurr or Schmidt told him he could. (*Id.* at 30).

At 4:04 p.m. on Friday, May 29, Nancy Khuong, an Ed's Precision human-resources employee, wrote herself an email with the subject line "Fire Josh Sprague." (Docket Entry 34-17 at 2). The body of the email stated: "Josh left at 2:30 when he was told to stay till 3:30." (*Id.)*. On Monday, June 1, Schmidt called Sprague into his office and told him he was fired. (Docket Entry No. 28-10 at 39). Sprague signed the company's employee-termination notice. (Docket Entry No. 28-8 at 1). According to Sprague's deposition, Ed's Precision never issued him "any sort of written discipline" before this incident. (Docket Entry No. 28-10 at 32).

Sprague asserted claims for interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. (Docket Entry No. 1). The parties conducted discovery and

4

submitted a large summary judgment record. This record is examined under the applicable legal standards.

## II. Summary Judgment

### A. The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters.,Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response." *Pioneer*

5

*Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.,* 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

### B.     The Family and Medical Leave Act

The Family and Medical Leave Act allows qualified employees working for covered employers to take up to 12 weeks of unpaid leave during a 12-month period, for an employee's serious health condition or to take care of family members. *See* 29 U.S.C. § 2612(a); *Willis v. Coca Cola Enter., Inc.*, 445 F.3d 413, 417 (5th Cir. 2006). The Act prohibits employer interference with leave and retaliation for taking leave. *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013). An "eligible employee" is "an employee who has been employed —(i) for at least 12 months by the employer . . . and (iii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

In response to the COVID-19 pandemic, Congress passed the Emergency Paid Sick Leave Act, an amendment to the Family and Medical Leave Act. *See* Pub. L. No. 116-127, 134 State.

178 (Mar. 18, 2020). The Emergency Paid Sick Leave Act expands the list of reasons that qualify an employee for leave. The six added conditions include that the employee: (1) "is subject to a Federal, State, or local quarantine or isolation order related to COVID-19"; (2) "has been advised by a health care provider to self-quarantine due to concerns related to COVID-19"; (3) "is experiencing symptoms of COVID-19 and seeking a medical diagnosis"; (4) "is caring for an individual subject" to a quarantine or isolation order by the government or a healthcare provider; (5) is caring for a child whose school or place of care is closed, or whose childcare provider is unavailable, because of COVID-19; or (6) "is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor." *Id.* § 5102(a).

### C. The Summary Judgment Record

Ed's Precision submitted the following summary judgment evidence:

- the declaration of Patrick McLaughlin, Chief Operating Officer of Ed's Precision, (Docket Entry No. 28-1);
- Ed's Precision's employment policies, (Docket Entry No. 28-2);
- Sprague's acknowledgement of Ed's Precision's employee handbook, (Docket Entry No. 28-3);
- the Emergency Paid Sick Leave Act – Leave Request Form from Sprague, (Docket Entry No. 28-4);
- Sprague's training record, (Docket Entry No. 28-5);
- the declaration of Ramiro Schuur, dated June 2, 2020, (Docket Entry No. 28-6);
- the declaration of Jesus Ramirez, dated June 1, 2020, (Docket Entry No. 28-7);
- Sprague's employee disciplinary notice, (Docket Entry No. 28-8);

- Sprague's payroll report, (Docket Entry No. 28-9);

- Sprague's deposition, (Docket Entry No. 28-10)

- Sprague's response to Ed's Precision's first set of interrogatories, (Docket Entry No. 28-11);

- the Growing Scholars Montessori School's daily attendance record (Docket Entry No. 28-12);

- the Growing Scholars Montessori School's time card detail, (Docket Entry No. 28-13);

- an email from Jenn Sprague, dated April 3, 2020, (Docket Entry No. 28-14);

- Gleason Elementary School's student attendance record, (Docket Entry No. 28-15); and

- an email from Gleason Elementary, dated May 18, 2020, (Docket Entry No. 28-16).

Sprague submitted the following summary judgment evidence:

- Sprague's declaration, (Docket Entry No. 34-1);

- an employee disciplinary notice for Dewayne Mason, (Docket Entry No. 34-4);

- an employee disciplinary notice for Joshua Larson, (Docket Entry No. 34-5);

- an employee disciplinary notice for Kyle Cullins, (Docket Entry No. 34-6);

- an employee disciplinary notice for Bryan Sullivan, (Docket Entry No. 34-7);

- an employee disciplinary notice for Bryan Sullivan, (Docket Entry No. 34-8);

- an employee disciplinary notice for Kent Washburn, (Docket Entry No. 34-9);

- an employee disciplinary notice for an anonymous employee, (Docket Entry No. 34-10);

- an employee disciplinary notice for an anonymous eployee, (Docket Entry No. 34-11);

- the Texas Governor's Executive Order GA-14, (Docket Entry No. 34-12);

- the Texas Governor's proclamation on Executive Order GA-14, (Docket Entry No. 34-13);

- the Center for Disease Control's guidelines on COVID-19 risk conditions, (Docket Entry No. 34-14);

- the Center for Disease Control's guidelines for older adults, (Docket Entry No. 34-15);

- an email from Nancy Khoung, dated May 29, 2020, (Docket Entry No. 34-17);

- an employer response to a notice of application for unemployment insurance, (Docket Entry No. 34-18);

- Ed's Precision's third supplemental answers and objections to Sprague's first set of interrogatories, (Docket Entry No. 34-19);

- Ed's Precision's objections and responses to Sprague's second set of discovery, (Docket Entry No. 34-20); and

- Cypress-Fairbanks ISD's 2019−2020 Calendar, (Docket Entry No. 34-22).

### III. Analysis

#### A. The Evidentiary Objections

Ed's Precision objects to employee disciplinary records Sprague submitted with his opposition. (Docket Entry Nos. 34-4−34-11). Ed's Precision argues that these records are hearsay and were not properly authenticated. (Docket Entry No. 35).

These employee records are not hearsay; they are opposing-party admissions under Federal Rule of Evidence 801(d). The records do not need to be authenticated at the summary-judgment stage, as long as they are "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56. The records are on an Ed's Precision form document. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998) (a document produced in discovery by the party against whom it was to be used and which bore other indicia of authenticity was sufficiently authenticated); *see also Cunningham v. Burns*, No. 3:12-CV-1824, 2014 WL 4707391, at *5 (N.D. Tex. Sept. 22, 2014) ("The letter is sufficiently authenticated because it is on a letterhead from the [defendant]."). Ed's Precision does not argue that these records were fabricated or contain some other flaw. *See Pryor v. MD Anderson Cancer Ctr.*, No. 10-CV-1623, 2012 WL 1038766, at *5 (S.D. Tex. Mar. 26, 2012) (sustaining an objection to summary-judgment evidence because it had "not been produced in discovery" and the defendant did not "concede" that the evidence was "maintained in its files").

Ed's Precision also objects to two executive orders from the Texas Governor and screenshots from the Centers for Disease Control and Prevention website. (Docket Entry Nos. 34-12–34-15). The court did not rely on these exhibits in reaching its decision.

### B. Family and Medical Leave Act Retaliation

To make a prima facie showing of retaliation under the Family and Medical Leave Act, Sprague must show that: "(1) [he] engaged in protected activity; (2) the employer took a materially adverse action against [him]; and (3) a causal link exists between [his] protected activity and the adverse action." *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016); *see also Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). When the plaintiff has no direct evidence of

discriminatory intent, courts apply the *McDonnell Douglas* framework to determine the reason for an employee's discharge. *See Wheat*, 811 F.3d at 705; *Tatum*, 930 F.3d at 713; *Richardson*, 434 F.3d at 332. If a prima facie case showing is made, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Richardson*, 434 F.3d at 332. The burden then shifts back to the plaintiff to show "that the employer's articulated reason is a pretext for" retaliation. *Id.* at 332–33.

1.  **The Prima Facie Showing**

    a.  **Protected Activity**

Sprague took intermittent leave from April 3, 2020, to May 28, 2020. Taking FMLA leave is a protected activity. *See Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020). Ed's Precision argues that Sprague did not engage in protected activity because he submitted an improper FMLA request and was not eligible for FMLA leave. Sprague argues that Ed's Precision is equitably estopped from asserting an eligibility defense because it approved his request for FMLA leave.

An employer can be equitably estopped from "asserting an eligibility defense against an employee to whom the employer had made representations of FMLA leave eligibility." *Byrd v. City of Houston*, No. 18-CV-778, 2019 WL 355746, at *8 (S.D. Tex. Jan. 29, 2019) (citing *Minard v. ITC Deltacom Comms., Inc.*, 447 F.3d 352 (5th Cir. 2006)). To raise a factual dispute as to equitable estoppel, the employee must present evidence that: (1) the employer made "a definite but erroneous representation" that the employee is eligible and entitled to leave; (2) the employer "has reason to believe that the employee will rely upon" the representation; and (3) "the employee reasonably relies on that representation and takes action thereon to her detriment." *Minard*, 447 F.3d at 359.

11

Sprague formally requested leave using Ed's Precision's "Emergency Paid Sick Leave Act – Leave Request Form," which was modeled after the Emergency Paid Sick Leave Act. (Docket Entry No. 34-21). Sprague indicated on the form that he needed leave to care "for a child whose school or place of care is closed due to COVID-19." (*Id.*). He requested intermittent leave, with two days off per week. (*Id.*). He signed the request form, as did his supervisor. (*Id.*). Ed's Precision approved Sprague's request, (*id.*), and gave Sprague the leave he requested, (Docket Entry No. 19 at ¶¶ 7, 9). Ed's Precision did not request additional information from Sprague, such as where his children attended school or the names of other available caretakers. The record raises genuine factual disputes material to determining each of the three *Minard* factors.

First, Ed's Precision represented to Sprague that he was eligible for leave under the Family and Medical Leave Act. Sprague's supervisor signed the leave form Sprague submitted, (Docket Entry No. 34-21), and Ed's Precision allowed Sprague to work on intermittent FMLA leave for nearly two months before he returned full time. *See Minard*, 447 F.3d at 354 (the plaintiff established the first *Minard* factor because the defendant represented that the plaintiff was eligible for leave).

Second, Ed's Precision had reason to believe that at least one of Sprague's children would not be able to attend school during the COVID-19 pandemic. While Sprague's youngest child was able to attend school, it is undisputed that the middle child's school closed in response to the COVID-19 pandemic. (Docket Entry No. 28 at 6; Docket Entry No. 34 at 18). Sprague checked the box on Ed's Precision's leave form indicating that he needed leave to care "for a child whose school or place of care is closed due to COVID-19," one of the approved reasons under the Emergency Paid Leave Act. (Docket Entry No. 34-21); *see also* 29 C.F.R. § 826.20(b) ("An Eligible Employee may take Expanded Family and Medical Leave because he or she is unable to

work due to a need to care for his or her Son or Daughter whose School or Place of Care has been closed . . . for reasons related to COVID–19 [but] only if no suitable person is available to care for his or her Son or Daughter during the period of such leave."). This gave Ed's Precision "a clear reason to believe that [Sprague] would rely on" the representation that he was eligible for leave. *Byrd*, 2019 WL 355746, at *9.

Third, Sprague relied on Ed's Precision's representation to his detriment. While Ed's Precision argues that it terminated Sprague because he left work early on his first day back at work, the record, as discussed below, raises a genuine factual dispute as to whether this reason was a pretext for retaliation. *See Minard*, 447 F.3d at 354 (finding a factual issue material to determining whether the plaintiff detrimentally relied on the defendant's representation when the defendant terminated the plaintiff on the day she returned from leave); *Hildabolt v. Highmark Health*, No. 4:17-CV-769, 2017 WL 7052283, at *2 (S.D. Tex. June 5, 2017) ("If Plaintiff took absences in reliance upon the expectation of FMLA leave, and her termination was motivated in part by these absences, she could satisfy the requirements for equitable estoppel."). Ed's Precision also suggests that it would have fired Sprague after discovering that the youngest child's school did not close because Sprague "materially misrepresented to [Ed's Precision] that he needed paid sick leave." (Docket Entry No. 28 at 18); *Byrd*, 2019 WL 355746, at *10 ("There is a clear factual dispute about the causal connection between the [the plaintiff's approved] absences and [her] termination, material to determining that [the plaintiff's] reliance on [the defendant's] material representation of her eligibility was to her detriment."). Had Ed's Precision raised this alleged documentary shortcoming before Sprague took leave, he could have corrected it or made alternate arrangements.

Sprague has raised a genuine factual dispute material to determining whether he engaged in protected activity under the Family and Medical Leave Act.

13

b. **Adverse Employment Action**

Sprague was fired and his firing qualifies as an adverse employment action. *See Besser*, 834 F. App'x at 884 (firing is an adverse employment action).

c. **Causal Link**

Sprague has submitted evidence that Ed's Precision fired him two days after he returned from leave and made plans to fire him on the day he returned. (Docket Entry No. 34-17). This close temporal proximity is sufficient to show the causal link required for Sprague's prima facie retaliation showing. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation."); *see also Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 559 (S.D. Tex. 2014) (17 days satisfies the causation standard); *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 870 (S.D. Tex. 2008) (15 days).

2. **The Legitimate, Nonretaliatory Reason**

Ed's Precision argues that it fired Sprague because he left work early on May 29, 2020. (Docket Entry No. 28-8). Missing working hours is a legitimate, nonretaliatory reason for firing an employee. *See Dillard v. City of Austin, Texas*, 837 F.3d 557, 561 (5th Cir. 2016); *Parker v. Georgia-Pac. Corp.*, 247 F. App'x 507, 509 (5th Cir. 2007).

3. **Pretext**

"A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment

action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Sprague has pointed to record evidence that suggests that Ed's Precision (1) treated Sprague less favorably than employees who missed work without permission but had not taken FMLA leave and (2) did not fire Sprague because he left work early one day.

The record shows that other machinists who did not take leave and worked under the same supervisor, Ken Schmidt, left early or arrived late but were not fired. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (pretext may be shown "where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct"). One machinist showed up two hours late for work but received a three-day suspension. (Docket Entry No. 34-4). Two machinists missed work on a Saturday but received a written warning. (Docket Entry No. 34-5; Docket Entry No. 34-6). Another machinist missed a day of work and lied about the reason but received a three-day suspension. (Docket Entry No. 34-9); *see Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 262 (5th Cir. 2009) ("They held identical positions [working for the defendant], compiled a similar number of serious moving violations over a similar period of time, including an identical infraction for which [the plaintiff] was fired and [the comparator] was granted leniency, and their ultimate employment status rested with the same person.").

The record also shows that Ed's Precision made plans to fire Sprague the day after he completed his leave. Temporal proximity is "not alone sufficient" to show pretext, *Berry v. Parish*, 834 F. App'x 843, 847 (5th Cir. 2020) (citation and quotation marks omitted), but this "near-immediate" temporal proximity raises a factual dispute material to determining whether Ed's Precision's reason for firing Sprague was pretext, *Watkins v. Tregre*, 997 F.3d 275, 285–86 (5th Cir. 2021) ("When combined with the discredited reason [for firing the plaintiff,] the near-immediate [two-day] temporal proximity of the discharge to the protected activity leaves us with

15

no room to doubt that [the plaintiff] has carried her summary-judgment burden of producing 'substantial evidence' that [the defendant] would not have fired her but for her FMLA-protected activity.").

Sprague points out that Ed's Precision initially asked him to use vacation time or take unpaid time off rather than use leave under the Family and Medical Leave Act. (Docket Entry No. 34-23 at 34). Sprague also testified that he had never received a warning or suspension in his 15 years at Ed's Precision. (Docket Entry No. 34-23 at 32); *Nixon v. Silverado Hospice of Hous.*, No. 12-CV-0985, 2013 WL 3973980, at *6 (S.D. Tex. July 31, 2013) ("Plaintiff received excellent evaluations prior to January 2011.").

Sprague argues that Ed's Precision's reason for firing him is false. He testified in his deposition that he did not leave work early without permission and that his shop supervisor, Ramiro Schuur, gave him his paycheck for the week and "told [him that he] could leave early." (Docket Entry No. 34-23 at 25, 26, 31, 32). He also testified that Schuur gave his coworker his paycheck and told him he could leave early. (Docket Entry No. 34-23 at 25).

Sprague has raised genuine factual issues relevant to determining whether Ed's Precision fired him in retaliation for using leave under the Family and Medical Leave Act. Ed's Precision's motion for summary judgment on Sprague's retaliation claim is denied.

C.     **Family and Medical Leave Act Interference**

To make a prima facie showing of FMLA interference, a plaintiff must show that: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Sprague's interference claim turns on the final factor.

Ed's Precision argues that it did not deny Sprague benefits under the Family and Medical Leave Act because he received the full amount of leave he requested. There is an apparent split among courts inside and outside the Fifth Circuit over whether to dismiss an interference claim when the plaintiff is fired shortly after returning from leave. Some courts dismiss interference claims when the plaintiff is terminated after receiving the leave that he or she requested. *See Kendall v. Walgreen Co.*, No. 12-CV-847, 2014 WL 1513960, at *5 (W.D. Tex. Apr. 16, 2014) ("Because the [interference and retaliation] claims are essentially identical, all of the relevant case law suggests that [the plaintiff's] interference claim should be dismissed."); *Rodriguez v. Mental Health Mental Retardation Auth. of Harris Cty.*, No. 08-CV-334, 2009 WL 10719444, at *4 (S.D. Tex. Mar. 17, 2009) ("[The plaintiff] received all of the FMLA leave she requested and to which she was entitled. Consequently, her interference claim is without merit."); *see also Varise v. H & E Healthcare, LLC*, No. 10-CV-666, 2012 WL 5997202, at *3 (M.D. La. Nov. 30, 2012) (collecting cases). These courts dismiss claims either because they are "duplicative" of the plaintiff's retaliation claim, *Kendall*, 2014 WL 1513960, at *5, or because interference requires the plaintiff to show that he was "terminated while he was availing himself of the FMLA rights to which he was entitled," *Spears v. La. Dep't of Pub. Safety & Corr.*, 2 F. Supp. 3d 873, 878 (M.D. La. 2014).

Other courts have held that employers cannot avoid an interference claim by waiting until employees return from leave before firing them. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1288 (10th Cir. 2007) ("To hold otherwise would create a perverse incentive for employers to make the decision to terminate during an employee's FMLA leave, but allow the employee to return for a brief period before terminating her so as to insulate the employer from an interference claim."); *Kendall*, 2014 WL 1513960, at *5 ("[S]ome courts have held that a plaintiff

17

can make out an interference claim by showing that her employer interfered with her right to reinstatement following leave.").

This apparent split stems from a lack of clarity about the specific right at issue. An interference claim requires the plaintiff to show that the employer terminated the plaintiff while he "was availing himself of FMLA rights to which he was entitled." *Forbes v. Unit Tex. Drilling, LLC*, 526 F. App'x 376, 379 (5th Cir. 2013); *Jiles v. Wright Med. Tech., Inc.*, 313 F. Supp. 3d 822, 844 (S.D. Tex. 2018) ("[A] plaintiff must at least show that [the defendant] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him]." (citations and quotation marks omitted)). Courts typically address claims for interference as involving one of two distinct rights: the right to leave and the right to reinstatement. *See Jiles*, 313 F. Supp. 3d at 844 (distinguishing interference claims for denial of leave benefits and failure to reinstate); *see also* 29 U.S.C. § 2614(a) (outlining the right "to be restored . . . to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment"); 29 U.S.C. § 2612(a) (outlining the right to leave).

When a plaintiff is terminated after returning from the full period of requested leave, the plaintiff cannot show a denial of benefits because the plaintiff received the requested benefits. But the plaintiff may be able to show that the employer interfered with the plaintiff's right to reinstatement or retaliated against the plaintiff for using leave. *See Jiles*, 313 F. Supp. 3d at 844 ("[The plaintiff] does not contend that [the defendant] denied him FMLA benefits. . . . [H]e was provided the leave and he took it. Thus, his evidence is more appropriately analyzed as a retaliation claim."); *see also Vanstory-Frazier v. CHHS Hosp. Co., LLC*, No. 08-CV-3910, 2010 WL 22770, at *10 (E.D. Pa. Jan. 4, 2010) ("Because there is evidence from which a jury reasonably could

18

conclude that elimination of plaintiff's position was a foregone conclusion by the time she returned to work, the court agrees that summary judgment is not warranted as to plaintiff's interference claim."); *Burke v. Lab'y Corp. of Am.*, No. 08-CV-2072, 2009 WL 3242014, at *5 (M.D. Fla. Oct. 6, 2009) ("Returning to a position only long enough to be fired does not amount to a meaningful reinstatement under the statute.").

Sprague alleges that Ed's Precision interfered with his right to leave benefits, not his right to reinstatement. He argues that Ed's Precision interfered with his leave benefits from April 3, 2020, to May 28, 2020, and with leave benefits that he might claim in the future.

Sprague received the leave he requested from April 3, 2020, to May 28, 2020, and then was temporarily reinstated to his position at Ed's Precision. Ed's Precision's actions during this period cannot support an interference claim because Sprague received all the leave he requested. *See Jiles*, 313 F. Supp. 3d at 844.

Sprague did not signal that he intended to take leave in the future. *See Satterfield v. Wal-Mart Stores*, Inc., 135 F.3d 973, 980–81 (5th Cir. 1998). In his deposition, he testified that he did not request additional leave when he returned to work full time and "did not have the chance to tell" Ed's Precision that he might need to take more leave in the future. (Docket Entry No. 28-10 at 23). At most, he told Ed's Precision that he would "have to see how things go with the next school year." (*Id.*). This statement was not enough to put Ed's Precision on notice that Sprague intended to take additional leave under the Family and Medical Leave Act. *See Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 913 (5th Cir. 2010) ("[The plaintiff] never informed [the defendant] that he intended to take leave, only that he 'might' need to take leave and that there was 'possibility' that he would need to take leave. These comments were not sufficient 'to make the employer aware that [he] need[ed] FMLA-qualifying leave.'"); *see also Lanier v. Univ. of Tex.*

*Sw. Med. Ctr.*, 527 F. App'x 312, 317 (5th Cir. 2013) (a "text message requesting to be taken off call" did not put the defendant on notice that the plaintiff would request leave).

Ed's Precision's motion for summary judgment on Sprague's FMLA-interference claim is granted.

**IV.      Conclusion**

Ed's Precision's motion for summary judgment on Sprague's claim for interference under the Family and Medical Leave Act is granted.  (Docket Entry No. 28).  Ed's Precision's motion for summary judgment on Sprague's claim for retaliation under the Family and Medical Leave Act is denied.

SIGNED on July 9, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge