UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSH SPRAGUE, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civ. A. No. 4:20-CV-2604 |
| ED'S PRECISION MANUFACTURING, LLC, | § § § § | |
| *Defendant*. | § § § | |

**DEFENDANT ED'S PRECISION MANUFACTURING, LLC'S
AMENDED MEMORANDUM OF LAW**

TO THE HONORABLE CHIEF JUDGE LEE H. ROSENTHAL:

Defendant Ed's Precision Manufacturing, LLC respectfully files this Amended Memorandum of Law in support of its contested issues of law.

**A. Plaintiff was not entitled to any leave under the applicable statutes, because he did not, and cannot, meet the statutory prerequisites.**

Plaintiff asserts claims against Defendant for (1) "FMLA Interference" and (2) "FMLA Discrimination and Retaliation." *See* [Doc. No. 1] (Pl.'s Orig. Compl.) ¶¶ 14–23. However, Plaintiff was not entitled to any leave because he did not, and cannot, meet the statutory prerequisites entitling him to leave under the FMLA and EFMLEA. Plaintiff was not eligible for paid leave under these statutes.

1. *Plaintiff was not entitled to any leave under the applicable statutes, because he did not provide any of the statutorily required information or documentation.*

In order to be eligible for paid leave under the FMLA and EFMLEA for reasons related to caring for children due to the COVID-19 global pandemic, Plaintiff was required to provide a signed statement attesting to certain facts. First, Plaintiff was required to provide a signed

statement containing (1) his name, (2) the date(s) for which leave is requested, (3) the COVID-19 qualifying reason for leave, and (4) a statement representing that he is unable to work or "telework" because of the COVID-19 qualifying reason. *See* 29 C.F.R. § 826.100. Plaintiff never provided this required statement.

Plaintiff was required to provide additional information to his employer to be entitled to the requested leave because Plaintiff was taking leave to care for his two youngest children, A.S. and E.S., whose schools allegedly closed due to COVID-19. *See* 29 C.F.R. § 826.100; *see also* [Doc. No. 1] ¶ 8; *see also* [Doc. No. 28-4]; *see also* [Doc. No. 28-10], at 76:14 – 77:06; *see also* [Doc. No. 28-11] at Interrog. No. 15. Specifically, Plaintiff was required to provide (1) the name of the child being cared for, (2) the name of the school, place of care, or childcare provider that closed or became unavailable due to COVID-19 reasons, and (3) a statement representing that no other suitable person is available to care for the child during the period of requested leave. *See* 29 C.F.R. § 826.100. Plaintiff failed to provide any of the statutorily required information or documentation. *See* [Doc. No. 28-1] ¶¶ 4, 16; *see also* [Doc. No. 28-10], at 79:12–21.

2.  *Plaintiff was not entitled or eligible for any leave under the applicable statutes, because there were suitable people available to care for his children.*

Plaintiff was not entitled to leave under the FMLA and EFMLEA because there were numerous other suitable people available to care for his children.

An employee is entitled to take leave under the EFMLEA and EPSLA if he is unable to work due to a need to care for his son or daughter whose school or place of care has been closed, or whose childcare provider is unavailable, for reasons related to COVID-19 ***only*** if no other suitable person is available to care for the son or daughter during the period of such leave. *See* 29 C.F.R. § 826.20(b) (emphasis added).

Plaintiff's own testimony establishes there were multiple family members who could have assisted in caring for his children during the period of requested leave. *See* [Doc. No. 28] §§ I(B)(1), III(A)(2); *see also* [Doc. No. 28-10], at 38:03–14, 39:02–11, 39:19–20, 40:03–06, 41:24–43:01, 44:25 – 45:04, 47:01–04, 47:16–19, 48:05–09, 48:16–19, 49:04–20, 50:02–11, 51:08–18, 51:23 – 52:04, 52:07–14, 55:09–13; 55:21–23, 56:13–21; 57:01–12.

Additionally, Plaintiff testified he and his wife did not need assistance to supervise their children when they were home alone with them. *See* [Doc. No. 28-10], at 57:13–25. During the COVID-19 global pandemic, Plaintiff's wife telecommuted, working remotely from home. *See id.*, at 71:04–07, 73:24 – 74:04, 131:20–23; *see also* [Doc. No. 28-14]. Plaintiff also considers his eldest daughter E.C. a responsible child, allowing her to babysit her two siblings during the COVID-19 pandemic. *See* [Doc. No. 28-10], at 35:14–15, 37:01–22. On April 22, 2021, Plaintiff's wife, Jennifer Sprague, testified both her older children have supervised her other children on their own.

3.  *Plaintiff was not entitled or eligible for the requested leave under the applicable statutes, because Plaintiff's child's school was not closed and he took leave after the last graded assignments were due.*

It is indisputable that Plaintiff's sole reason for requesting leave was to care for his two youngest children, A.S. and E.S., because their schools allegedly closed due to COVID-19. *See* [Doc. No. 28-4]; *see also* [Doc. No. 28-10], at 76:14 – 77:06; *see also* [Doc. No. 28-11], at Interrog. No. 15. It is also indisputable that for the 2019–2020 school year, Plaintiff's middle child, A.S., attended Gleason Elementary, while Plaintiff's youngest child, E.S., attended Growing Scholars Montessori. *See* [Doc. No. 28-12], Daily Attendance; *see also* [Doc. No. 28-13]; *see also* [Doc. No. 28-11], at Interrog. No. 15; *see also* [Doc. No. 28-15].

Despite Plaintiff allegedly needing leave to care for both A.S. and E.S., Growing Scholars Montessori School, E.S.'s school, never closed during 2020 with all locations being open, operating, and providing its normal services during its normal business hours during the months of March 2020, April 2020, May 2020, and June 2020. *See* [Doc. No. 28-12] ¶ 4. During the entirety of May 2020 E.S. attended school approximately five (5) days per week, with Plaintiff taking FMLA leave on days when E.S. was at school. *See* [Doc. No. 28-12]; *see also* [Doc. No. 28-13]; *compare* [Doc. No. 28-9] *with* [Doc. No. 28-13].

Furthermore, for A.S., all graded assignments were required to be turned in by May 18, 2020. *See* [Doc. No. 28-16]. However, Plaintiff continued taking paid sick leave until May 27, 2020—finally informing Ed's Precision that he had completed his requested paid leave and would be returning to his normal work schedule. *See* [Doc. No. 28-9]; *see also* [Doc. No. 28-10], at 87:25–89:05.

**B. Plaintiff's threadbare FMLA discrimination and retaliation claim fails because Plaintiff was terminated for legitimate, nonretaliatory reasons.**

Plaintiff claims Ed's Precision terminated him because he requested and took FMLA/EFMLEA leave. [Doc. No. 1] ¶¶ 22–23.

To prevail on an FMLA retaliation claim, a plaintiff must first demonstrate a prima facie case for retaliation by showing that (1) he engaged in protected activity, *i.e.*, requesting or taking FMLA-qualifying leave, (2) an adverse employment action occurred, and (3) that the plaintiff was treated less favorably than an employee who had not requested FMLA leave or the adverse employment decision was made because the plaintiff took FMLA leave. *See Mauder v. Metro. Transit. Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006). The third element requires the employee to show "there is a causal link" between the FMLA-protected activity and the adverse action. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). An FMLA

4

retaliation claim requires a plaintiff to show discriminatory intent. *See Cuellar v. Keppel Amfels, LLC*, 731 F.3d 342, 349–50 (5th Cir. 2013) (Elrod, J., concurring).

As discussed above, Plaintiff was not engaging in a protected activity because he was not eligible for paid leave under the FMLA or EFMLEA.[1] *See, supra* §(A). Plaintiff has no evidence establishing that he was treated less favorably than an employee who had not requested FMLA leave or his adverse employment decision was made ***because the plaintiff took FMLA leave***, as he is required to show. *See Mauder*, 446 F.3d at 583. Rather, the evidence establishes Plaintiff was terminated for legitimate, non-discriminatory, non-retaliatory reasons. *See* [Doc. No. 28-8]; *see also* [Doc. No. 28-10], at 106:01 – 107:24, 110:08–20.

Approximately three (3) weeks before his termination, Plaintiff was expressly advised, in writing, of the importance of working all scheduled hours—which he acknowledged. *See* [Doc. No. 28-5]; *see also* [Doc. No. 28-10], at 67:19–21, 68:10–14, 68:23 – 69:04, 69:09–19. Furthermore, Plaintiff testified it was improper to leave work early without telling a supervisor because the procedure required him telling one of his supervisors that he needed to leave. *See* [Doc. No. 28-10], at 65:05–12, 66:10–13. Plaintiff disregarded these directives, clocked out at 2:35 p.m., left work without informing any of the supervisors, and was terminated as a result. *See* [Doc. No. 28-1] ¶ 8; *see also* [Doc. No. 28-10], at 67:06–11, 102:05–14, 103:25 – 104:3, 106:01 – 107:24, 108:20–22, 110:08–20; *see also* [Doc. No. 28-8]. Plaintiff also failed to report to work on Saturday, May 30, 2020, as he was instructed to do.

---

[1] Because Plaintiff cannot make a prima facie showing of discrimination or retaliation, the burden does not shift to Ed's Precision to articulate a legitimate, non-discriminatory reason for the challenged action. *See Matson v. Sanderson Farms, Inc.*, 388 F.Supp.3d 853, 869 (S.D. Tex. 2019) (Rosenthal, J.). But, even if the burden shifted, Ed's Precision has established a legitimate, non-discriminatory reason for Plaintiff's termination.

Plaintiff's claim also fails because he cannot show that Ed's Precision had a discriminatory intent in terminating Plaintiff—as is required. *See Cuellar*, 731 F.3d at 349–50. Plaintiff was terminated for legitimate reasons, *i.e.* insubordination and violation of company policies, defeating Plaintiff's claim. *See* [Doc. No. 28-1] ¶ 8; *see also* [Doc. No. 28-8], at 1; *see also* [Doc. No. 28-10], at 103:25 – 104:3; *see also Parker v. Georgia-Pacific Corp.*, 247 Fed.Appx. 507, 509 (5th Cir. 2007) (per curiam) (holding that summary judgment was appropriate where employee was terminated outside FMLA leave period for, *inter alia*, insubordination and leaving job earlier than requested or approved and Plaintiff failed to show stated reasons were pretextual).

Lastly, Plaintiff claims Ed's Precision's stated reasons for termination are pretextual. *See* [Doc. No. 1] ¶ 10. This is incorrect and appears to be solely based on timing. This Court and the U.S. Court of Appeals for the Fifth Circuit have held that temporal proximity alone is not sufficient to support a reasonable inference of pretext. *See Matson*, 388 F.Supp.3d at 883.

## C. In the event of a liability finding, Plaintiff cannot prevail on his remaining claim because he did not actually suffer any damages or injuries.

Defendant denies Plaintiff is entitled to recover any damages. However, in the event this Court finds that Plaintiff is entitled to recover damages, Plaintiff's damages are limited to those listed in the FMLA.

If Plaintiff can prove Defendant violated the FMLA/EFMLEA, Plaintiff may be entitled to receive "any wages, salary, employment benefits, or other compensation denied or lost to [Plaintiff] by reason of [Defendant's] violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I).[2] To the extent

---

[2] Plaintiff is not entitled to recover the damages listed in Section 2617(a)(1)(A)(i)(II). A plaintiff cannot sue for both monetary losses and wages, salary, etc. *Barrilleaux v. Thayer Lodging Group, Inc.*, No. CIV. A. 97–3252, 1998 WL 614181 at *1 (E.D. La. 1998). Here, Plaintiff seeks recovery of his alleged lost wages and benefits as a result of Defendant's alleged violation of the FMLA. *See* [Doc. 1]; *see also* [Doc. 47-5], at 6. Thus, Plaintiff is only entitled to recover damages pursuant to Section 2617(a)(1)(A)(i)(I). *See Barrilleaux*, 1998 WL 614181 at *1 (Holding that employee can only recover damages allowed by

6

that Plaintiff can show "actual monetary losses," he may be entitled to interest and to liquidated damages in an equal amount. *See id.* at §§ 2617(a)(1)(A)(ii), (iii). Injunctive relief may be available as appropriate. *See id*. at § 2617(a)(1)(B). "[I]n addition to any judgment awarded to the plaintiff, [the court shall] allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." *Id*. at § 2617(a)(3).

1. <u>Plaintiff is not entitled to recover punitive damages or "compensatory damages" under the EFMLEA or FMLA.</u>

Plaintiff is not entitled to recover punitive damages or "compensatory damages" under the EFMLEA or FMLA. Recovery under FMLA is "unambiguously limited to actual monetary losses." *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277 (10th Cir.2001). A successful FMLA plaintiff is not entitled to recover compensatory damages or punitive damages for such injuries as physical or emotional harm, mental distress, or loss of job security. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 930 (5th Cir. 1999) (successful FMLA plaintiff was not entitled to recover out-of-pocket expenses for moving and job search, nor damages for mental anguish); *see also Sturza v. Loadmaster Engineering, Inc.*, Civil Action No. H-07-2500, 2008 WL 1967102, at *3, 7-8 (S.D. Tex. May 1, 2008) (collecting cases) ("The remedies available under the FMLA do not include damages for emotional distress or punitive damages."); *see also Walker*, 240 F.3d at 1277–78 (nominal damages). The Fifth Circuit has described recoverable damages under the FMLA as limited to "lost salary or wages, lost employment benefits, or any 'other compensation' that is indicative of a quid pro quo relationship between an employer and an employee." *Nero*, 167 F.3d at 930. Accordingly, Plaintiff is not entitled to recover punitive damages or "compensatory damages" under the EFMLEA or FMLA. *See Nero*, 167 F.3d at 930

---

Section 2617(A)(i)(I) because the employee is claiming that she lost wages and benefits as a result of defendant's violation of the FMLA).

7

(FMLA does not include damages for emotional distress, nor does it provide for recovery of general or consequential damages); *see also Sturza*, 2008 WL 1967102, at *3.

2. <u>*Plaintiff is not entitled to back pay because he did not suffer any actual damages.*</u>

"Back pay" commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred. *Rutherford v. Harris County*, 197 F.3d 173, 191 (5th Cir. 1999). The purpose of back pay is to place the plaintiff in the same financial position she would have otherwise occupied but for the employer's unlawful conduct. *See Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002). Back pay is to be calculated from the time the adverse employment action takes place to the date of judgment. *Rutherford*, 197 F.3d at 191. The measure of damages for lost insurance benefits in FMLA cases is either actual replacement cost for the insurance, or expenses actually incurred that would have been covered under a former insurance plan. *Lubke v. City Of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006). The lost "value" of benefits, absent actual costs to the plaintiff, is not recoverable. *Id*.

Additionally, an award for back pay does not include the period(s) of time when the plaintiff took the leave. *See Seymour v. U.S. Postal Service*, No. 04–2261–BBD–tmp, 2010 WL 1254933, at * (W.D. Tenn. Mar. 25, 2010) (holding plaintiff not entitled to back pay for weeks of unpaid FMLA leave, and reducing back pay award by that time period); *see also Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008) ("a plaintiff may not collect damages for periods of time in which he otherwise would have been unable to work for the company"). Furthermore, any back pay award must be offset by the amount of wages, earnings, and other income and benefits received by the plaintiff during the back pay period. *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th

Cir. 1996) (ADEA lawsuit)[3]; *see also Seymour v. Pendleton Community Care*, 209 W. Va. 468, 549 S.E.2d 662 (2001) (actual wages received or wages employee could have received at comparable employment where it is locally available will be deducted from any back pay award). Courts offset back pay awards in order to make a prevailing plaintiff whole, and to avoid windfall awards. *See Johnson v. Martin*, 473 F.3d 220, 222 (5th Cir. 2006) (FLSA lawsuit); *see also Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 886 (S.D. Tex. 2009) (finding that plaintiff's unemployment benefits should be subtracted from any backpay award to preclude a windfall); *see also Grace v. Georgia Gulf Corp.*, No. CIV. A. 00-482-B, 2002 WL 31455701, at *4 (M.D. La. Sept. 30, 2002) (finding in an FMLA case had Plaintiff proven damages they would be offset by sums the Plaintiff received from other sources, such as unemployment or subsequent employment).

Here, Plaintiff lost no benefits or compensation due to his termination. In fact, had Plaintiff not been terminated, he likely would have made less money than he did being unemployed in June 2020 as well as working for his new employer. *See* [Doc. 47] at 8-9. However, in the event Plaintiff receives an award of back pay, such award should be limited by amounts earned from his subsequent employment.

3. *Plaintiff has failed to demonstrate any actual loss or entitlement to front pay damages.*

Plaintiff claims he is entitled to front pay damages but has failed to provide any actual damage total or calculation. "Front pay is awarded to compensate the plaintiff for lost future wages and benefits." *Rutherford*, 197 F.3d at 188 (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)). All evidence produced in this case establishes that Plaintiff has suffered no earning loss and is actually earning more money at his new job than he ever made working for

---

[3] *Lubke*, 455 F.3d at 499 ("Because the remedies available under the ADEA and the FMLA both track the FLSA, cases interpreting remedies under the statutes should be consistent.").

9

Defendant—especially when the additional benefits conferred by Plaintiff's current employer are considered. Plaintiff has not demonstrated, nor can he, an entitlement to front pay damages.

4. *<u>Plaintiff is not entitled to liquidated damages because he did not actually suffer any damages or injuries. In the event Plaintiff is awarded actual damages, Plaintiff is still not entitled to recover liquidated damages because Defendant acted in good faith.</u>*

Under the FMLA, an employee may receive "an additional amount as liquidated damages equal to the sum of" back pay, benefits, and prejudgment interest. 29 U.S.C. § 2617(a)(1)(A)(iii).

A court may reduce a liable employer's liquidated damages if the employer "proves **to the satisfaction of the court** that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission" did not violate the Act. *See* 29 U.S.C. § 2617(a)(1)(A)(iii) (emphasis added); *see also Byrd v. City of Houston*, No. 18-CV-778, 2019 WL 355746, at *13 (S.D. Tex. Jan. 29, 2019). The employer "faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the [statute]." *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003) (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)).

The FMLA does not define good faith. *See Nero*, 167 F.3d at 928. But, the good faith determination includes "an analysis of both whether an employee had a subjective intent to comply with the FMLA and whether it acted objectively in applying it." *Firth v. Don McGill of W. Houston, Ltd.*, No. H-04-0659, 2006 WL 846377, at *2 (S.D. Tex. Mar. 28, 2006), aff'd sub nom, *Firth v. McGill*, 233 Fed.Appx. 346 (5th Cir. 2007). The subjective component therefore considers an employer's intent to know the FMLA's requirements and to act in accordance with them; the objective aspect considers whether an employer could reasonably believe its conduct comported with the FMLA. *Id.*; *see also Johnson v. City of Monroe*, No. 06-0635, 2007 WL 2479658, at *2 (W.D. La. Aug. 27, 2007) (finding employer acted in subjective good faith and with objective


reasonable belief so as to avoid liquidated damages where it took affirmative steps to comply with the FMLA and facilitated plaintiff's use of legitimate FMLA leave).

Here, Plaintiff cannot recover any liquidated damages because he did not suffer any actual damages, including lost wages, lost employment benefits, or "other compensation." In the event Plaintiff is awarded actual damages, Plaintiff is still not entitled to recover liquidated damages because Defendant acted in good faith. Specifically, Defendant it took affirmative steps to comply with the FMLA/EFMLEA and facilitated Plaintiff's use of legitimate FMLA/ EFMLEA leave by providing Plaintiff with all his requested EFMLEA leave. Accordingly, Plaintiff is not entitled to recover any liquidated damages.

## D. The after-acquired evidence doctrine bars Plaintiff's front pay and precludes back pay damages.

In the alternative, even if Plaintiff could establish Ed's Precision discriminated or retaliated against him—which he cannot—front pay and back pay are not appropriate remedies because he committed a terminable offense of which Ed's Precision was previously unaware.

The after-acquired evidence doctrine limits the relief available to a successful plaintiff if the employer would have terminated plaintiff's employment for conduct the employer failed to discover until after the allegedly discriminatory termination occurred. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 361-62 (1995). While the after-acquired evidence doctrine does not absolve employers of liability, the employee's own conduct forecloses any equitable award of front pay or reinstatement, and limits the award of back pay to the time period between the date of the unlawful termination and the date on which the employer discovered the new information. *McKennon*, 513 U.S. at 361–62 (recognizing the need to take employee's wrongdoing into account before crafting a remedy for the employee's discriminatory discharge in violation of the ADEA). To affect this remedy, employers bear the burden of proving "that the wrongdoing

was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." *Weeks v. Coury*, 951 F. Supp. 1264, 1274 (S.D. Tex. 1996). Employers, however, need not demonstrate that they have previously discharged other employees for the same reason. *Id*. Moreover, it is of no consequence that the evidence on which the employer relies as an alternative basis for termination was "acquired during the course of discovery in a suit against the employer, ... even if the information might have gone undiscovered absent the suit." *McKennon*, 513 U.S. at 362.

Ed's Precision's Employment Policies provides a non-exhaustive list of conduct which would subject an employee to disciplinary action, including termination—(1) falsification, misrepresentation or omission of information, documents or records, (2) lying, (3) falsifying injury reports or reasons for leave. *See* [Doc. No. 28-2] § 7.1.

Plaintiff materially misrepresented to Defendant that he needed paid sick leave to care for his two youngest children, A.S. and E.S., because their schools closed due to COVID-19. [Doc. No. 1] ¶ 8; *see also* [Doc. No. 28-4]; *see also* [Doc. No. 28-10], at 76:14 – 77:06; *see also* [Doc. No. 28-11] at Interrog. No. 15. However, E.S.'s school never closed during 2020; she actually went to school approximately five (5) days per week during the entirety of May 2020; and in May 2020 Plaintiff took FMLA leave on days when E.S. was at school. *Compare* [Doc. No. 28-9] *with* [Doc. No. 28-13]; *see also* [Doc. No. 28-12]. Additionally, A.S. completed the 2019–2020 school year on May 18, 2020 but Plaintiff continued taking paid sick leave until May 27, 2020. *See* [Doc. No. 28-16]; *see also* [Doc. No. 28-9]; *see also* [Doc. No. 28-10], at 87:25–89:05.

These facts have only come to light through discovery in this case when Defendant obtained records from the Growing Scholars Montessori School and Gleason Elementary. Had

12

Defendant known of Plaintiff's misrepresentations to the company it would have terminated his employment. *See* [Doc. No. 28-1] ¶ 12.

               Respectfully submitted,

              By: */s/ Robert E. Freehill*
                 Robert E. Freehill
                 Texas State Bar No.: 24069023
                 S.D. Tex. No. 1839921
                 Attorney-In-Charge
                 Johnson & Associates
                 Attorneys at Law, PLLC
                 303 East Main Street, Suite 100
                 League City, Texas 77573
                 Main:281-895-2410
                 Fax: 409-263-1020
                 robert@Johnson-Attorneys.com

                 ATTORNEY-IN-CHARGE FOR
                 DEFENDANT

**OF COUNSEL:**

Christopher L. Johnson
Texas State Bar No. 24069999
S.D. Tex. No. 1050247
chris@Johnson-Attorneys.com
Caroline E. Bossier
Texas State Bar No.: 24110669
S.D. Tex. No.: 3557678
caroline@Johnson-Attorneys.com
Johnson & Associates
Attorneys at Law, PLLC
303 East Main Street, Suite 100
League City, Texas 77573
Main:281-895-2410
Fax: 409-263-1020

**CERTIFICATE OF SERVICE**

 I certify that a true and correct copy of this document has been served on all attorneys of record and/or pro-se litigants by electronic mail from the clerk of this Court on October 8, 2021:

Via ECF/CM
Clayton D. Craighead
State Bar No. 24065092
S.D. Tex. No. 958992
440 Louisiana, Suite 900
Houston, TX 77002
Ph.: 832.798.1184
Fax: 832.553.7261
Clayton.craighead@thetxlawfirm.com

Sara Richey
State Bar No. 24068763
3801 Kirby Drive, Suite #344
Houston, Texas 77098
Tel.: (713) 636-9931
sara@thericheylawfirm.com

                */s/Robert E. Freehill*
                Robert E. Freehill